**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

ARTHUR RAY MONTGOMERY,

                   Petitioner,

                                              **Hon. Hugh B. Scott**
                                              05-CV-0829Sc

                 v.

                                              **Report**
                                              **&**
                                              **Recommendation**

R. K. WOODS, Warden,
                 Respondent.

Before the court is a petition for habeas corpus relief filed by Arthur Ray Montgomery ("Montgomery" or "the petitioner") pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

After a jury trial commencing on March 7, 2000, the petitioner was convicted of two counts of promoting prison contraband in the first degree in violation of New York Penal Law §205.25(2). He was sentenced as a second felony offender to concurrent, indeterminate terms of imprisonment of 2½ to 5 years on each of the counts.[1]

---

[1] The acts serving as the basis of the contraband charges occurred while the petitioner was incarcerated as a result of a murder conviction rendered in 1983. See People v. Montgomery, 134 N.Y.S.2d 2d 853 (2d. Dept. 1987), *lv. denied* 70 N.Y.S.2d 2d 842 (1988).

1

The following evidence was presented at trial. On May 24, 1999 Corrections Officers Arthur Tipton and Larry Updike were assigned to the metal detector which was located in the Elmira Correctional Facility (R. 68-70, 100-02).[2] When the petitioner who was an inmate of the facility passed the detector, the alarm sounded. Officer Tipton asked the petitioner to go through the metal detector again. As the petitioner went through the detector, the alarm sounded again (R. 71-73, 100-02). After waving a metal detecting hand-wand over the petitioner's body, Officer Updike conducted a pat-down search. He found a sock in the petitioner's pocket which contained two sharpened metal shanks (R. 73-74, 102-04). Montgomery testified at the trial. he contended that he never set off the metal detector and that the prison officers conspired against him. (R. 132-47).

In his summation, defense counsel argued as follows:

> Mr. Tipton also told you there is approximately seven, eight officers around the vicinity of where he was working at this metal detector. Why didn't we see any of those officers who have seen what had happened -- or who may have seen what had happened? Further neither of these witnesses could recall who these other officers were. Therefore, making it impossible for us to call them. Maybe this is why they waited five months or maybe because the reason to answer the question why is that Mr. Montgomery, as he testified, did not -- was not even in possession of these shanks. Maybe he was set up.

(R. 182).[3]

---

[2] Reference denoted "(R. __)" refer to the trial transcript submitted along with the state court record in this case.

[3] The respondent asserts that defense counsel did not accurately reflect Tipton's testimony. The transcript reflects that Tipton testified that there were "usually two to eight officers in that area," that "[a]t that time there were probably others in the general area," but that Tipton could not recall who else was there. (R. 85).

In response, during his summation, the prosecutor stated:

> Defense counsel also asked, well, where are those other witnesses ... who may have seen this incident. There wasn't any testimony that there was other officers standing right there watching this incident. We don't know who those other officers were. Even if we did, ladies and gentlemen, what are other officers going to add to this? You really want to hear four, five or six more officers tell you the same thing that these two did?

(R. 188-189).

The petitioner also contends that the prosecutor's suggestion that the petitioner might be motivated to untruthful testimony because he doesn't like being in prison. (Docket No. 5 at ¶ 8 of the attached Memorandum of Law). In this regard, the prosecutor stated:

> Also, I want you to think about what motive the defendant would have to come in here and possibly say something that's not true. The defendant testified he doesn't like prison.[4]  Can't blame him. I can't say as I would want to spend a single day in prison. But ask yourself, what do you think is going to happen if he gets convicted?  You thnk they are going to let him out?

(R. 193).

The sole claim asserted in the instant petition is that the prosecutor's remarks made during summation violated Montgomery's right to a fair trial. (Docket No. 5 at ¶ 13).

---

[4]  It is undisputed that Montgomery did testify that he did not like being in prison. (R. 151)

**DISCUSSION**

**Exhaustion**

In the interests of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. [5]  See Ayala v. Speckard, 89 F. 3d 91 (2d Cir. 1996), citing Picard v Connor, 404 U.S. 27, 275, 92 S.Ct 509, 512, 30 L.Ed 2d 438 (1971); Daye v Attorney General of New York, 696 F. 2d 186, 191 (2d Cir. 1982) (en banc), cert denied, 464 U.S. 1048 (1984).  A state prisoner seeking federal habeas corpus review of his conviction must first exhaust his available state court remedies with respect to issues raised in the federal habeas petition.  Rose v Lundy, 455 U.S. 509 (1982)  To meet this requirement, the Petitioner must have raised the question in a state court challenge to his conviction and put the state appellate court on notice that a *federal constitutional claim* was at issue.  See Grady v. Le Ferve, 846 F. 2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F. 2d 684, 688-89 (2d Cir. 1984).  A state court is deemed to have been put on notice of the federal constitutional nature of a claim if the petitioner: (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to similar factual patterns; (3) asserted his claim "in terms so particular as to call to mind a specific right protected by the Constitution[;]" or (4) alleged patterns well within the mainstream of constitutional litigation.  Daye, 696 F.2d at 194.

The respondent does not contest the petitioner's exhaustion of state court remedies. Based on the record before the Court, it appears that the petitioner has exhausted his state court

---

[5] Section 2254(b) provides the Court with discretion to *deny* (but not to grant) an application for a writ of habeas corpus on the merits notwithstanding the failure of the applicant to exhaust state court remedies.

remedies and therefore review of the claims asserted in the petition is appropriate.

**Standard of Review**

State court findings of "historical facts," and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F. 2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986). (See also 28 U.S.C. § 2254(e)(1) which states that, "a determination of a factual issue made by a State court shall be presumed to be correct".)

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 [6] ("AEDPA"), § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to determinations made by state trial and appellate courts. Smith v. Sullivan, 1988 WL 156668 (W.D.N.Y 1998) (Larimer, C. J) Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert denied, 490 U.S. 1059 (1989).

In enacting AEDPA, Congress intended to heighten the deference given to state court

---

[6] Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.104-132, 110 Stat. 1214.

determinations of law and fact. As noted in Smith, AEDPA has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way. Smith, 1998 WL 156669 at *3. AEDPA "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v Ahitow, 104 F. 3d 926, 936 (7th Cir. 1997) (quoting Emerson v Gramley, 91 F.3d 898, 900 (7th Cir. 1996) cert. denied, 520 U.S. 1122, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997)); see also Houchin v Zavaras, 107 F. 3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion.")

**Prosecutorial Misconduct Claim**

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." Darden v. Wainright, 477 U.S. 168, 106 (1986) (quoting Donnell v. Dechristoforo, 416 U.S. 637, 642 (1974)). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181. In order to grant relief, the Court would have to find that the prosecutor's comments during summation constituted more than mere trial error, and were instead so egregious as to violate petitioner's due process rights. In other words, the prosecutor's remarks must be "so prejudicial that they rendered the trial in question fundamentally unfair." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)(internal quotation marks omitted). Finally, summation remarks "must be examined within the context of

the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 12 (1985).

The challenged prosecutorial remarks do not rise to the level of a constitutional violation. The prosecutor's remarks as to the failure to call the unidentified correctional officers as additional witnesses was in response to statements made by the defense counsel. Natal v. Bennett, 1998 WL 841480, *8 (S.D.N.Y. 1998) (finding no prosecutorial misconduct based on statements made during summation where "[m]uch of the objectionable content was invited by or was in response to the opening summation of the defense"). The prosecution is entitled to rebut arguments raised during the defense summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" Readdon v. Senkowski, 1998 WL 720682, *4 (S.D.N.Y.1998) (quoting Orr v. Schaeffer, 460 F.Supp. 964, 967 (S.D.N.Y.1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Pilgrim v. Keane, 2000 WL 1772653, *3 (E.D.N.Y. 2000). Considering the context of the trial, it does not appear that the petitioner suffered any actual prejudice arising from the prosecutor's statement. The comment relating to what testimony the uncalled witnesses might provide was an isolated, collateral issue raised by defense counsel in the opening summation. Although the Court overruled a contemporaneous objection (R. 189), during the jury charge, the jurors were instructed not to speculate about matters not in evidence. (R. 204-205). The comment was not so severe as to affect the jury's verdict. See Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (juries are presumed to follow the Court's instructions).

Likewise, the prosecutor's remark suggesting that the petitioner's dislike for the prison

might be a motive for him to provide untruthful testimony does not amount to a denial of due process.  "Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory."  United States v. Peterson, 808 F. 2d 969, 977 (2d Cir. 1987).  Once again, the challenged comment was made in response to defense counsel's attack on the credibility of the prosecutor's witness.  Such statements, examined within the context of the trial, do not deprive the petition of due process or fundamental fairness.  See Brinson v. Walker, 407 F. Supp. 2d 456, 471-74, (W.D.N.Y., 2006).  See also Ocasio v. Snow, WL 15257 at *2 (S.D.N.Y. 1986) (finding that the prosecutor's comment that the policemen who had testified were not interested witnesses and suggested that, in contrast, the defendant had a motive to lie in this case did not deny due process to the petitioner.)  Lucas v. Scully, WL 97866 at *14 (S.D.N.Y., 1989) (finding that the prosecutor's argument that petitioner had the greatest motive to lie when compared to other witnesses did not deny due process to the petitioner.)  In this case, the credibility of the witnesses was clearly in issue, and the prosecutor's statement was made in response to defense counsel's attack on the credibility of the testimony rendered by Tipton and Updike.  Finally, the prosecutor commented on the petitioner's motive only once in his summation and the words which were used in his comment were not inflammatory.

   In sum, the challenged statements, taken separately or together, were no so prejudicial that they rendered the trial in question fundamentally unfair.  The Court cannot conclude that the state court determination in this regard (Docket No. 10, Exhibit C, page 2) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or an unreasonable determination of the facts in light of the evidence presented.

**CONCLUSION**

Based on the above, it is recommended that the petition for habeas corpus be DENIED.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                                */s/ Hugh B. Scott*
                                                      United States Magistrate Judge
                                                      Western District of New York

Buffalo, New York
July 21, 2008